In the Matter of the Estate of WILLIAM J. MATHESON, Deceased.*
WILLIS D. WOOD, as Executor, etc., Appellant; PARKE A. GALLEHER, Appearing Specially, Respondent.

Second Department, March 5, 1934.

*Stephen Callaghan* [*Howard O. Wood* and *Elliott W. Smith* with him on the brief], for the appellant.

*I. Gainsburg*, for the respondent.

KAPPER, J.   The respondent, Parke A. Galleher, is an attorney with offices in Washington, D. C., and had represented the decedent, William J. Matheson, during his lifetime in various tax matters arising out of income taxes, having been employed therefor by the attorneys for said Matheson.   After decedent's death, Galleher was retained by the New York attorneys for the decedent's estate to represent the estate before the Tax Unit in Washington; and the appellant, one of the executors, claims that Galleher was paid $30,000 for his services to the estate up to January 1, 1932.   Thereafter he was retained by one of sa d New York attorneys to act as counsel to the executors and to render further services to the estate; and a contract was entered into between them on February 12, 1932, whereby, according to the petition before us, " the said Galleher was to receive a further and final fee of Fifteen Thousand ($15,000) Dollars for all further services rendered the estate, with the exception of litigation involving a possible gift tax."   This sum was also paid and the petitioner claims this constituted settlement in full.   On May 11, 1933, however, Galleher presented the executors with a bill for professional services claimed to have been rendered from May 16, 1930 (the day after decedent's death), to January 14, 1933, in the sum of $187,456.57, which the executors rejected.   The petitioner asked the Surrogate's Court for the issuance of a citation to Galleher to show cause, pursuant to section 231-a of the Surrogate's Court Act, why " he should not appear before this Court and give testimony and proof, if any, concerning the particulars of his claim hereinabove referred to against the executors of the estate of William J. Matheson, deceased, and why said claim, if any, should not be fixed and determined."   This petition is dated May 26, 1933, and an order for the issuance of a citation was made by the surrogate on May 29, 1933, and the cita-

tion itself, made returnable July 3, 1933, was served upon Galleher by one Benjamin L. Tepper, an attorney of Washington, D. C., on June 2, 1933.

Galleher has made a special appearance in the Surrogate's Court, claiming: " That the Court has no jurisdiction over the person.

" That the Court has no jurisdiction over the subject matter.

" That no valid service of citation has been made upon the respondent.

" That the said Parke A. Galleher, respondent, is not admitted to practice as an attorney at law in the State of New York, and has not acted or participated in any proceeding in this Court and therefore not within the purview of Section 231-A of the Surrogate's Court Act."

This notice of special appearance is dated September 29, 1933.

In his opinion the learned surrogate states that " The papers also indicate that the said claimant [Galleher] brought an action in the Supreme Court of New York county, in or about the month of August, 1933, against Willis D. Wood and Hugh M. Matheson and Howard O. Wood, individually, and as sole surviving partner of the co-partnership Wood, Cooke & Seitz. The amount demanded in the complaint in that suit is $187,456.57, the identical claim which the executors seek to have adjudicated by this court." There is nothing in the record with respect to this subsequent commencement of an action as indicated by the surrogate, but the statement of the commencement of such action is not disputed.

The respondent, as stated, challenges the jurisdiction of the Surrogate's Court to hear and determine this claim.

Section 231-a of the Surrogate's Court Act reads:

" § 231-a. Compensation of attorneys. At any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the surrogate shall have power to hear an application for and to fix and determine the compensation of an attorney for services rendered to an estate or to its representative, or to a devisee, legatee, distributee or any person interested therein; or in proceedings to compel the delivery of papers or funds in the hands of such attorney.

" Such proceeding shall be instituted by petition of a representative of the estate, or a person interested, or an attorney who has rendered services. Notice of the application shall be given in such manner as the surrogate may direct. The surrogate may direct payment therefor from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein."

While most frequently the application to fix compensation of an

attorney under this section is made by the attorney claiming compensation, the section plainly provides for the commencement of such a proceeding on the petition of a representative of the estate, as was done here.

Service of the citation on Galleher was accomplished in accordance with the provisions of section 58-a of the Surrogate's Court Act in that it was made by " an attorney and counselor at law duly qualified to practice in the State where such service is made."

The respondent, nevertheless, contends that the Surrogate's Court never acquired jurisdiction of the subject-matter of the controversy. There is no question that this attorney performed services *for the estate* and expected to be paid from the assets thereof, and it is, therefore, difficult to understand his reasoning to the effect that the Surrogate's Court has no jurisdiction to hear and determine a claim against a decedent's estate in process of administration in that forum. The general jurisdiction of the Surrogate's Court as defined by section 40 of the Surrogate's Court Act seems broad enough to enable it to assume jurisdiction, particularly when the specific provisions of section 231-a with reference to the surrogate's power to fix compensation for attorneys is kept in mind in conjunction therewith. Section 40, Surrogate's Court Act, provides in part:

" § 40. General jurisdiction of Surrogate's Court. Each surrogate must hold, within his county, a court, which has, in addition to the powers conferred upon it, or upon the surrogate, by special provision of law, jurisdiction, as follows:

" To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires."

This claimant, when he engaged in the service in question, admittedly knew that he was doing so on behalf of the estate and thereby rendered himself amenable to the process of the court having jurisdiction of the subject-matter with reference to any claim which he might make against the estate.

The respondent's contention, upon which the surrogate relied in dismissing the proceeding, is that section 231-a of the Surrogate's Court Act had no application to attorneys outside of the State of New York who have rendered services outside of the State, even

though those services are rendered on behalf of and are to be paid out of the estate. There is no sound reason to support this limitation upon the scope of section 231-a. Why should attorneys rendering services on behalf of an estate be separated into two classes in so far as their relations with the estate are concerned, merely because of geographical location, where the Surrogate's Court of this State has jurisdiction of the subject-matter? The purpose of the section undoubtedly is to expedite the settlement of all claims, including attorney's services, to the end that administration of the estate may be completed with dispatch. As appellant points out in his brief, section 231-a is found at the end of article 12, which deals with " Claims; payment of debts, legacies," etc., and there is nothing in the entire article which would indicate a difference in the method of settling claims arising within the State and those arising without the State. There is, therefore, no sound reason for reading into the section a limitation, arbitrary in nature, which does not seem to have been comprehended by the Legislature.

With respect to respondent's subsequent commencement of a Supreme Court action, this should have been stayed or dismissed. The appellant here did make such a motion before the New York County Special Term and it was denied, the grounds of the denial apparently being that the complaint may be subject to attack under rules other than the one under which it appears to have been made. However that may be, the decision is not binding upon the questions now before us. If, as I think, the Surrogate's Court has jurisdiction, then the rule laid down in *Colson* v. *Pelgram* (259 N. Y. 370, 375) is applicable, it being there said: " Where separate actions have been instituted between the same parties in reference to the same subject-matter in courts having concurrent jurisdiction the court which first obtains jurisdiction with adequate power to administer full justice should continue to exercise it. (*Schuehle* v. *Reiman*, 86 N. Y. 270; *Garlock* v. *Vandevort*, 128 N. Y. 374.) "

The order appealed from should be reversed on the law and the facts, with ten dollars costs and disbursements, and the prayer of the petitioner should be granted.

YOUNG, HAGARTY, CARSWELL and DAVIS, JJ., concur.

Order of the Surrogate's Court of Suffolk county setting aside the service of a citation and dismissing the appellant's petition reversed on the law and the facts, with ten dollars costs and disbursements, and the prayer of the petitioner granted.