## In re ROGERS' ESTATE.

### ROGERS LOCOMOTIVE & MACHINE WORKS v. ROGERS.

*(Surrogate's Court, Westchester County.   October, 1891.)*

ACCOUNTING BY TESTAMENTARY TRUSTEE—JURISDICTION OF SURROGATE.

When a petition asks that trustees be required to render a final account, and also pay a certain share of a trust legacy claimed by assignment, and the petitioner is not entitled to petition for the payment of the share under Code Civil Proc. N. Y. § 2804, which allows such proceedings to be taken by a person "entitled by the terms of the will," the petition will be retained for the accounting, it showing him entitled thereto, under Code Civil Proc. N. Y. § 2514, subd. 11, as interested in the estate by assignment.

SAME.

Under Code Civil Proc. N. Y. § 2812, which provides that upon a judicial settlement of the accounts of a testamentary trustee every controversy which arises respecting the right of any party to share in the money or personal property must be determined in the same manner as other issues are determined, a surrogate's court has jurisdiction to determine the validity of an assignment of a beneficiary's interest.

Petition of the Rogers Locomotive & Machine Works against Thomas Rogers (in the matter of the estate of Jason Rogers, deceased) for an accounting of dealings with a trust, and for payment of shares of the benefit assigned. The petition in this matter, presented by the Rogers Locomotive & Machine Works, of the city of Paterson, N. J., shows that the will of the deceased, among other things, created a trust in favor of Thomas Rogers; that said Thomas Rogers and William Cauldwell are the present trustees; that more than a year has elapsed since the will was admitted to probate; that the trustees have filed no account within a year; that the amount of the estate held by them is $500,000; that by the terms of the will the trust as to the share of Thomas Rogers is terminated, and is now payable; that said Thomas Rogers heretofore assigned his share to the extent of upwards of $35,000 to one Robert S. Hughes, who duly assigned the same to the petitioner; and prayed that a decree might be made directing the trustees "to render a final account of their proceedings, and pay to your petitioner said share of said Thomas Rogers, or sufficient thereof to satisfy" their claim, "and that they and all persons interested in said estate be cited to show cause why they should not render such account, and pay the same." The trustees, on the return of the citation issued, filed an answer, in which they allege that the pretended assignment to Hughes was without consideration; that the same is void; that said Hughes, as such assignee, never had, and has not now, nor has the petitioner, any interest in the estate of the testator or in any part thereof; that the interest claimed by the petitioner is also claimed by said Thomas Rogers; that the petitioner is not possessed of sufficient interest to compel an accounting; and that the court has no jurisdiction to determine the said conflicting claims.

*Bristow, Peet & Opdyke*, for petitioner.    *Wm. M. Du Bois*, for trustees.

COFFIN, S.   The petitioner has embarrassed the proceeding by praying for two different kinds of relief, the proceedings in which are regulated by different modes by the Code.   By section 2804, where a person is entitled by the terms of the will to the payment of money by a testamentary trustee, he may petition for payment; and by the next section, if the trustee file an answer showing that it is doubtful whether the claim is valid and legal, and denying its validity or legality, the surrogate shall make a decree dismissing the petition, etc.   This, as will be seen by reference to the Code, is a proceeding by itself, and distinct from others.   Then sections 2807–2809, *et seq.*, provide another distinct proceeding for the judicial settlement of the accounts of testamentary trustees.   These cannot well, and never should, be joined.   As

the petitioner cannot thus pursue both remedies at once, instead of dismissing the proceeding here it would be fair to permit it to elect the one on which it desires to proceed, were it not that it is in no position to proceed under section 2804 for the payment of its alleged claim, because it is not "entitled, by the terms of the will," to anything; it not being named therein at all. The petition will therefore be regarded as praying for an accounting only; and, as the petitioner is, on the face of the petition, interested in the estate, under the provisions of subdivision 11 of section 2514, it has a right to present such a petition. This being so, and the answer of the trustees having raised an issue as to the validity and legality of the claim, it is insisted that it has shown "good cause," under the provisions of section 2727, which is made applicable by section 2809 to a compulsory accounting by trustees, why the proceeding should not be entertained. In other words, that this court has no power to try the issue thus raised. It does not seem that this question has been adjudicated. It is true that the court of appeals has decided that the surrogate's court has no power to try a question as to the validity of a release in certain cases, (*Saunders* v. *Soutter*, 126 N. Y. 193, 27 N. E. Rep. 263,) and without careful consideration it might be assumed that, for like reasons there assigned, it had no power to try the validity of an assignment. While this doctrine may be sound when applied to the accountings of executors and administrators, it would seem that the Code establishes a different rule in the cases of accountings by trustees, for it provides by section 2812 that "upon a judicial settlement of the account of a testamentary trustee every controversy which arises respecting the right of any party to share in the money or personal property to be paid, distributed, or delivered over must be determined in the same manner as other issues are determined." If the words "by the surrogate" had been added, there could have been no probable room for doubt by reason of the remaining clause of the section. But that doubt is partially removed when we reflect that the surrogate's court, as well as any other court, may direct the distribution and retention there provided, pending the controversy before his court; and will be entirely removed when we refer to the legislative intent in that connection. The commissioners, in their draft of the Code in 1875, appended notes to the various sections reported by them to the legislature for enactment, and gave the number of the section in question as 2581. In the note to that section the commissioners say: "The first sentence is sufficiently explained in the note to section 2518, *ante*. The second sentence takes the place of section 2521, *ante*, which is only partially applicable to these proceedings." Turning to the note to section 2518, we find that after considerable reflection, and in view of decisions settling the question adversely to the power of the surrogate to determine claims on the accounting of an executor or administrator, it was concluded to acquiesce in the views expressed in those decisions in framing that section. Then they say: "It has been said that, as the surrogate is required to pass upon disputed claims upon an application to sell the decedent's real property, it is an anomaly to deny him the same power upon the settlement of the executor's or administrator's account; that this anomaly is rendered more striking by the circumstance that he can and must pass upon such claims as surrogate upon settling the accounts of a testamentary trustee of the same estate," etc.; and again: "The supposed anomaly arising out of the rule in the case of testamentary trustees and upon application to sell real property disappears upon a closer examination, for in each of those cases the surrogate sits as a court of equity; and a trial before him is the most convenient and speedy method of determining the issues." By reference to section 2521, which is 2745 of the present Code, it will readily be seen why it is only "partially applicable to these proceedings," without in any way depriving the surrogate of the power of determining controversies arising before him. It strikes me that the legislative intent to confer power on the surrogate, in proceedings of this charac-

ter, to hear and determine a controversy as to the validity or legality of an alleged assignment by a *cestui que trust* of his share, is too plain to be mistaken. The proceeding is therefore retained for the purpose of determining the question, and such other questions as may be presented. An order will therefore be entered directing the trustees to account.