### THRALL HOSPITAL v. CAREN.

(Supreme Court, Appellate Division, Second Department. October 7, 1910.)

1. HUSBAND AND WIFE (§ 19*)—LIABILITY OF HUSBAND—NECESSARIES.

A physician's service to a sick wife is a necessary that the husband must furnish, either through himself or through her implied authority to call a physician, and the husband is primarily liable therefor.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 135; Dec. Dig. § 19.*]

2. HUSBAND AND WIFE (§ 19*)—LIABILITY OF HUSBAND—NECESSARIES.

Where a wife, whose husband was sick in a hospital, was too ill to contract for her treatment in a hospital, and she was received in the hospital under an agreement between her physician and a physician connected with the hospital, the husband was primarily liable for the services of the physician and the incidental expenses of boarding and nursing her in the hospital, and the wife was not liable, because she did not expressly engage the services.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 135; Dec. Dig. § 19.*]

3. HUSBAND AND WIFE (§ 19*)—LIABILITY OF HUSBAND—NECESSARIES.

A wife does not become the principal debtor for necessaries received by her, or a surety for her husband's liability therefor, by merely promising, after the rendition of the services, to send her own check therefor.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 121–138; Dec. Dig. § 19.*]

Appeal from Trial Term, Orange County.

Action by the Thrall Hospital against Cecelia T. Caren. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, BURR, THOMAS, and CARR, JJ.

Elwood C. Smith, for appellant.
George H. Decker, for respondent.

THOMAS, J. The action is to recover for board, nursing, etc., received by defendant. The parties have refrained from furnishing a detailed history. On August 5, 1906, while defendant's husband was sick in plaintiff's hospital, she was removed to it for an operation for appendicitis. Dr. Hall, her attending physician, made the arrangements for her admission to the hospital through Dr. Mills, who seems to have been connected with the institution. She was too ill to make provision for herself, and did not. Indeed, her illness was so severe that the proposal to present a bill to her was postponed, and the charges were not communicated to her until her departure, when she said she

would send a check for them.　On January 1, 1907, a bill was sent her, with a letter requesting payment.　A bill was also presented to her husband for the same amount in 1906, and also to his estate, after the bill had been sent her without receiving attention.　So the case is that a woman, whose husband was in the hospital, and who was herself too ill to contract, was received by it pursuant to arrangements made by the physician in attendance co-operating with the physician who also was connected with the hospital, and upon discharge promised to send a check for the bill, which was presented to her husband and to his estate, and intermediate such two presentations to herself, without attention by her.　She did not engage the physician, so far as appears. She did not promise to pay before the service was rendered.

Does the law imply a promise?　The evidence is so limited that data for fair consideration is wanting.　The defendant seems to have had a home.　Dr. Hall was her physician, and advised her that she should go to the hospital, and made the arrangement through Dr. Mills, who was connected with the hospital.　A physician's service is a necessity that should be furnished by the husband, and presumptively was in this case, either through himself, or her implied authority to call a physician to attend a member of the family.　The physician so acting for the husband advised her to go to the hospital, and she went accordingly.　So the professional service was necessarily rendered in the hospital, and for it the husband was primarily liable.　The board and nursing were incidental to such service.　It may be that the husband elsewhere supplied a home and sustenance for her; but the room, board, and attendance at the hospital were for a different purpose and inseparable from her treatment.　In this view the plaintiff, thoroughly informed, should have regarded the husband as its debtor, unless the defendant expressly engaged the service, and thereby became personally liable.　But there is not the slightest evidence that she did or was able to do that.　Indeed, the plaintiff carefully refrained from broaching the subject until the time of her departure, when defendant promised to send a check.　Such statement did not cast the obligation upon her.　A wife does not become the principal debtor, or surety for her husband's debt, by promising to send a check for it, even if her own check was indicated.　The recovery upon an account stated is not permitted under the pleadings.

The judgment should be reversed, and a new trial granted; costs to abide the event.　All concur.